# UNITED STATES DISTRICT COURT
# DISTRICT OF DELAWARE

| | |
|---|---|
| JACK WOLF, Individually and On Behalf of All Others Similarly Situated, | ) ) ) |
| Plaintiff, | ) Case No. _____ ) |
| v. | ) JURY TRIAL DEMANDED ) |
| HOMEFED CORPORATION, JOSEPH S. STEINBERG, PAUL J. BORDEN, PATRICK D. BIENVENUE, TIMOTHY M. CONSIDINE, JIMMY HALLAC, BRIAN P. FRIEDMAN, MICHAEL A. LOBATZ, JEFFERIES FINANCIAL GROUP INC., and HEAT MERGER SUB, LLC, | ) CLASS ACTION ) ) ) ) ) ) ) ) |
| Defendants. | ) |

**COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934**

Plaintiff, by his undersigned attorneys, for this complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

**NATURE OF THE ACTION**

1.  This action stems from a proposed transaction announced on April 15, 2019 (the "Proposed Transaction"), pursuant to which HomeFed Corporation ("HomeFed" or the "Company") will be acquired by Jefferies Financial Group Inc. ("Parent") and Heat Merger Sub, LLC ("Merger Sub," and collectively with Parent, "Jefferies"). Jefferies currently owns approximately 70% of the outstanding shares of common stock of HomeFed.

2.  On April 12, 2019, HomeFed's Board of Directors (the "Board" or "Individual Defendants") caused the Company to enter into an agreement and plan of merger with Jefferies, which was amended on May 2, 2019 (the "Merger Agreement"). Pursuant to the terms of the

Merger Agreement, Jefferies will issue two shares of Jefferies common stock for each share of HomeFed common stock to be acquired by Jefferies.

3. On May 17, 2019, defendants filed a registration statement (the "Registration Statement") with the United States Securities and Exchange Commission (the "SEC") in connection with the Proposed Transaction, which scheduled a stockholder vote on the Proposed Transaction for June 28, 2019.

4. As set forth below, the Registration Statement omits material information with respect to the Proposed Transaction, which renders the Registration Statement false and misleading.  Accordingly, plaintiff alleges herein that defendants violated Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "1934 Act") in connection with the Registration Statement.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over the claims asserted herein pursuant to Section 27 of the 1934 Act because the claims asserted herein arise under Sections 14(a) and 20(a) of the 1934 Act and Rule 14a-9.

6. This Court has jurisdiction over defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7. Venue is proper under 28 U.S.C. § 1391(b) because a substantial portion of the transactions and wrongs complained of herein occurred in this District.

## PARTIES

8. Plaintiff is, and has been continuously throughout all times relevant hereto, the

owner of HomeFed common stock.

9. Defendant HomeFed is a Delaware corporation and maintains its principal executive offices at 1903 Wright Place, Suite 220, Carlsbad, California 92008. HomeFed's common stock is traded on the OTCQB Market under the ticker symbol "HOFD."

10. Defendant Joseph S. Steinberg ("Steinberg") is Chairman of the Board of the Company and has served as a director of the Company since August 1998. Steinberg is also Chairman of the Board of Directors of Jefferies. From January 1979 until March 2013, Steinberg served as President of Jefferies.

11. Defendant Paul J. Borden ("Borden") is Vice Chairman of the Board of the Company and has served as a director of the Company since May 1998. Borden was a Vice President of Jefferies from August 1998 through October 2000.

12. Defendant Patrick D. Bienvenue ("Bienvenue") has served as a director of the Company since August 1998. From January 1996 until April 2011, Bienvenue served in a variety of executive capacities with real estate related subsidiaries of Jefferies.

13. Defendant Timothy M. Considine ("Considine") has served as a director of the Company since January 1992. Considine is one of two members of the so-called special committee of the Board (the "Special Committee").

14. Defendant Jimmy Hallac ("Hallac") has served as a director of the Company since March 2017. Hallac is also a managing director of Jefferies, where he has been employed since 2002. Hallac serves on the boards of Jefferies portfolio entities.

15. Defendant Brian P. Friedman ("Friedman") has served as a director of the Company since April 2014. Friedman has also served as a director and President of Jefferies since March 2013. Since July 2005, Friedman has been a director and executive officer of Jefferies Group, a

wholly-owned subsidiary of Jefferies, and has been Chairman of the Executive Committee of Jefferies since 2002. Since 1997, Friedman has served as President of Jefferies Capital Partners, a private equity fund management company controlled by Friedman in which Jefferies has an ownership interest.

16. Defendant Michael A. Lobatz ("Lobatz") has served as a director of the Company since February 1995. Lobatz is a member of the Special Committee.

17. The defendants identified in paragraphs 10 through 16 are collectively referred to herein as the "Individual Defendants."

18. Defendant Parent is a New York corporation and a party to the Merger Agreement.

19. Defendant Merger Sub is a Delaware limited liability company, a wholly-owned subsidiary of Parent, and a party to the Merger Agreement.

## CLASS ACTION ALLEGATIONS

20. Plaintiff brings this action as a class action on behalf of himself and the other public stockholders of HomeFed (the "Class"). Excluded from the Class are defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated with any defendant.

21. This action is properly maintainable as a class action.

22. The Class is so numerous that joinder of all members is impracticable. As of April 11, 2019, there were approximately 15,500,246 shares of HomeFed common stock outstanding, held by hundreds, if not thousands, of individuals and entities scattered throughout the country.

23. Questions of law and fact are common to the Class, including, among others, whether defendants will irreparably harm plaintiff and the other members of the Class if defendants' conduct complained of herein continues.

24. Plaintiff is committed to prosecuting this action and has retained competent counsel experienced in litigation of this nature. Plaintiff's claims are typical of the claims of the other members of the Class and plaintiff has the same interests as the other members of the Class. Accordingly, plaintiff is an adequate representative of the Class and will fairly and adequately protect the interests of the Class.

25. The prosecution of separate actions by individual members of the Class would create the risk of inconsistent or varying adjudications that would establish incompatible standards of conduct for defendants, or adjudications that would, as a practical matter, be dispositive of the interests of individual members of the Class who are not parties to the adjudications or would substantially impair or impede those non-party Class members' ability to protect their interests.

26. Defendants have acted, or refused to act, on grounds generally applicable to the Class as a whole, and are causing injury to the entire Class. Therefore, final injunctive relief on behalf of the Class is appropriate.

## SUBSTANTIVE ALLEGATIONS

*Background of the Company and Jefferies*

27. HomeFed is a developer and owner of residential and mixed-use real estate projects in California, Virginia, South Carolina, Florida, Maine, and New York.

28. The majority of the Company's assets are either operating real estate or entitled land ready for sale. The Company also investigates and pursues the acquisition of new real estate projects, both residential and commercial.

29. According to the Registration Statement, in February 2014, Jefferies entered into a purchase agreement with the Company to contribute to HomeFed certain of Jefferies' real estate subsidiaries, investments, and $12.5 million in cash in exchange for shares of HomeFed common

stock.  Upon the closing of that transaction, Jefferies' ownership of HomeFed common stock increased from approximately 31% to approximately 65% of the outstanding shares.

30.     In March 2017, Jefferies proposed a transaction to purchase shares of HomeFed common stock from an undisclosed former HomeFed director.

31.     The Board subsequently formed the Special Committee comprised of Individual Defendants Lobatz and Considine.

32.     In August 2017, the Board approved Jefferies' proposed share purchase, which resulted in Jefferies becoming the beneficial owner of approximately 70% of the outstanding shares of HomeFed common stock.

33.     In September 2017, Special Committee member Considine wrote a letter to Individual Defendant Steinberg, who is both HomeFed's and Jefferies' Chairman, "stating Mr. Considine's view that HomeFed should be merged into Jefferies and cease to be a separate public company" (the "September 2017 Letter").

34.     In the September 2017 Letter, Considine "suggested an exchange ratio of approximately two shares of Jefferies common stock for each share of HomeFed common stock Jefferies did not own."

35.     The Registration Statement fails to disclose what prompted Considine to send the September 2017 Letter to Steinberg, including whether Jefferies previously approached Considine or any other Company representative regarding a potential merger.  The Registration Statement also fails to disclose Considine's basis for suggesting an exchange ratio of approximately two shares of Jefferies common stock for each share of HomeFed common stock.

36.     In December 2017, Special Committee members Considine and Lobatz "indicated to the other members of the HomeFed board their interest in exploring a transaction of the nature

described by Mr. Considine in his September 2017 letter."

37. In January 2018, the Special Committee met "to consider proposing to Jefferies a transaction whereby Jefferies would acquire, in exchange for shares of Jefferies common stock, a number of shares of HomeFed common stock that would increase Jefferies' current ownership in HomeFed from approximately 70% to no less than 80%."

38. On February 19, 2019, Jefferies issued a press release announcing a proposal to acquire the remaining shares of HomeFed common stock not already owned by Jefferies for consideration consisting of two shares of Jefferies common stock for each share of HomeFed common stock. The press release provided:

> Jefferies Financial Group Inc. (NYSE: JEF or Jefferies), which currently owns 70.1% of HomeFed Corporation (OTCMKTS: HOFD or HomeFed), a developer and owner of residential and mixed-use real estate properties primarily in California and New York, announced today that it is proposing to acquire the remaining common stock of HomeFed not already owned by Jefferies (the "Proposed Transaction"). The Proposed Transaction would entail Jefferies issuing two shares of Jefferies common stock for each share of the HomeFed's common stock to be acquired by Jefferies. Jefferies' proposal will include a condition that the Proposed Transaction will require the approval of a majority of the outstanding shares of the HomeFed's Common Stock not already owned by Jefferies (or its affiliates), in addition to any other vote required by applicable law.
>
> The Proposed Transaction would involve the issuance of approximately 9.25 million shares of Jefferies common stock, worth approximately $194.0 million at Friday's closing share price. Upon completion of the proposed transaction, Jefferies' total post-transaction carrying value of HomeFed's net assets would be approximately $651.0 million, reflecting a pre-tax gain of approximately $119 million that would result from revaluing our 70.1% historical ownership interest when Jefferies consolidates HomeFed.
>
> Rich Handler and Brian Friedman, CEO and President, respectively, of Jefferies, said "We generally would not issue shares at these prices, but we would do so here to facilitate a strategic transaction that might otherwise not be achievable. As a direct offset to those potentially issued shares, Jefferies' Board of Directors has, conditioned on the closing of the Proposed Transaction, authorized the repurchase of 9.25 million shares in the open market. This share-repurchase approval is incremental to the $500 million share repurchase recently approved by Jefferies' Board of Directors. We believe this proposed transaction makes good sense for both

   Jefferies and HomeFed, as it will allow Jefferies to consolidate HomeFed for tax purposes (which will avoid an extra layer of taxes as HomeFed monetizes its assets), affording greater flexibility as to the timing and form of maximizing value over time."

  39. On March 4, 2019, the Special Committee engaged Houlihan Lokey Capital, Inc. ("Houlihan") as a financial advisor, despite the fact that Houlihan has performed past services for Jefferies and its affiliates for which it has received compensation.

  40. In mid-March 2019, Jefferies informed Houlihan that it was not interested in selling its interest in HomeFed, either directly or indirectly.

  41. On March 15, 2019, the Special Committee determined not to contact any third parties regarding a potential sale of HomeFed.

  42. On March 25, 2019, the Special Committee "determined to make a proposal to Jefferies to set the exchange ratio for each share of HomeFed common stock to that number of shares of Jefferies common stock that would be valued at $42.00 at closing." Houlihan conveyed the proposal to Jefferies later that day.

  43. On March 26, 2019, Jefferies "obtained permission from one member of the special committee for another representatives of Jefferies to contact [a] representative of" Beck, Mack & Oliver LLP ("BMO"), which owned approximately 9% of the outstanding shares of HomeFed common stock. The Registration Statement fails to disclose which member of the Special Committee gave such permission and his reasons for doing so.

  44. During Jefferies' subsequent discussion with a BMO representative, "the representative of BMO indicated that BMO [was] willing to vote in favor of the proposed exchange ratio of two shares of Jefferies common stock for each share of HomeFed common stock."

  45. The next day, Jefferies rejected the Special Committee's March 25, 2019 proposal because "(a) Mr. Considine had written a letter to Jefferies in September 2017 that referenced an

approximate exchange ratio of two shares of Jefferies common stock for each share of HomeFed common stock and (b) Jefferies believed that BMO was willing to support the proposed transaction with the originally proposed exchange ratio."

46. On April 2, 2019, the Special Committee "determined to propose to Jefferies an exchange ratio of two shares of Jefferies common stock for each share of HomeFed common stock but with a collar that would (a) increase the exchange ratio to the number of shares of Jefferies common stock with a value of $38.00 if the price of Jefferies common stock was below $19.00 and (b) decrease the exchange ratio to the number of shares of Jefferies common stock with a value of $42.00 if the price of Jefferies common stock was above $21.00." Houlihan conveyed the proposal to Jefferies, and, in response, Jefferies proposed that "HomeFed stockholders [have] an election to receive for each share of HomeFed common stock either (a) $38.00 in cash or (b) two shares of Jefferies common stock, provided that if the value of Jefferies common stock is greater than $21.00 per share at the closing of the proposed transaction, the exchange ratio would be decreased to the number of shares of Jefferies common stock with a value of $42.00 at the closing of the proposed transaction."

47. On April 12, 2019, Houlihan provided a fairness opinion on Jefferies' latest offer to the Special Committee, and the Special Committee determined to approve the transaction with Jefferies. The Board subsequently approved the transaction, with "[t]hree directors, Messrs. Steinberg and Hallac and Brian Friedman, abstain[ing] from voting due to their affiliation with Jefferies."[1] The Registration Statement fails to disclose the reasons Individual Defendants

---

[1] Individual Defendant Steinberg is Chairman of the Board of Directors of Jefferies, and served as President of Jefferies from January 1979 until March 2013. Individual Defendant Hallac is a managing director of Jefferies, where he has been employed since 2002, and serves on the boards of Jefferies portfolio entities. Individual Defendant Friedman has served as a director and President of Jefferies since March 2013. Friedman has also been a director and executive officer

9

Bienvenue and Borden did not abstain from voting due to their affiliations with Jefferies.[2]

48. On April 12, 2019, the parties executed the original Merger Agreement.

49. On April 15, 2019, BMO and an investment advisor firm that advises accounts holding a substantial number of shares of HomeFed common stock expressed that "they preferred the originally proposed fixed exchange ratio of two shares of Jefferies common stock for each share of HomeFed common stock to the consideration set forth in the merger agreement dated April 12, 2019, which would decrease the exchange ratio if the value of Jefferies common stock is greater than $21.00 per share at the closing of the proposed transaction, but would also provide an election to stockholders to receive $38.00 in cash in lieu of Jefferies shares, regardless of their value."

50. On April 27, 2019, the Special Committee determined to request that Jefferies agree to remove the adjustment on the exchange ratio in the event that the value of Jefferies common stock is greater than $21.00 per share at the closing of the proposed transaction without altering the $38.00 per share cash election, or propose another alternative to protect public stockholders from declines in the value of Jefferies common stock prior to the closing of the proposed transaction.

51. On April 29, 2019, Jefferies expressed that it was willing to amend the Merger Agreement to provide for a fixed exchange ratio of two shares of Jefferies common stock for each share of HomeFed common stock but without the $38.00 per share cash election.

52. On May 2, 2019, Houlihan provided a new fairness opinion to the Special

---

of Jefferies Group since July 1995, Chairman of the Executive Committee of Jefferies since 2002, and President of Jefferies Capital Partners since 1997.

[2] Individual Defendant Borden was a Vice President of Jefferies from August 1998 through October 2000. Individual Defendant Bienvenue served in a variety of executive capacities with real estate related subsidiaries of Jefferies from January 1996 until April 2011.

Committee with respect to a transaction that would provide for a fixed exchange ratio of two shares of Jefferies common stock for each share of HomeFed common stock and remove the cash election.

53.     The Special Committee and Board subsequently approved the amended Merger Agreement, with "[t]hree directors, Messrs. Steinberg, Friedman and Hallac, abstain[ing] from voting due to their affiliation with Jefferies."  Again, the Registration Statement fails to disclose the reasons Individual Defendants Bienvenue and Borden did not abstain from voting due to their affiliations with Jefferies.

54.     On May 2, 2019, the parties executed an amendment to the Merger Agreement reflecting the modification to the merger consideration.

***The Proposed Transaction***

55.     HomeFed's Board caused the Company to enter into the Merger Agreement with Jefferies.

56.     Pursuant to the terms of the Merger Agreement, Jefferies will issue two shares of Jefferies common stock for each share of HomeFed common stock to be acquired by Jefferies.

57.     The Merger Agreement contains a "no solicitation" provision that prohibits the Individual Defendants from soliciting alternative proposals and severely constrains their ability to communicate and negotiate with potential buyers who wish to submit or have submitted unsolicited alternative proposals.  Section 5.02(a) of the Merger Agreement provides:

> Except as expressly permitted by this Section 5.02, the Company shall not, and shall use reasonable best efforts to cause its and the Company Subsidiaries' directors, officers and employees not to, and shall instruct its investment bankers, attorneys, accountants and other Representatives not to, directly or indirectly:
>
> (i) solicit, initiate, knowingly encourage or knowingly facilitate any inquiries or the making of any proposal or offer that constitutes, or could reasonably be expected to lead to, an Acquisition Proposal;
>
> (ii) participate in any discussions or negotiations with any Person regarding any

11

> Acquisition Proposal; or
>
> (iii) provide any non-public information or data concerning the Company or any of its Subsidiaries to any Person in connection with any Acquisition Proposal[.] . . .
>
> The Company shall, and the Company shall cause its Subsidiaries and use reasonable best efforts to cause its Representatives to, immediately cease and cause to be terminated any discussions and negotiations with any Person conducted heretofore with respect to any Acquisition Proposal, or proposal that could reasonably be expected to lead to an Acquisition Proposal[.]

58. Additionally, the Company must promptly advise Jefferies of any proposals or inquiries received from other parties. Section 5.02(c) of the Merger Agreement states:

> At any time prior to obtaining the Company Requisite Stockholder Approvals, the Company shall promptly notify Parent if (i) any written or other bona fide inquiries, proposals or offers with respect to an Acquisition Proposal are received by the Company, the Special Committee or their respective Representatives, (ii) any non-public information is requested in connection with any Acquisition Proposal from the Company, the Special Committee or their respective Representatives or (iii) any discussions or negotiation with respect to an Acquisition Proposal are sought to be initiated or continued with the Company, the Special Committee or their respective Representatives, indicating, in connection with such notice, the name of such Person and the material terms and conditions of any proposals or offers (including, if applicable, copies of any written requests, proposals or offers, including proposed agreements) and thereafter shall keep Parent informed, on a reasonably current basis, of the status and terms of any such proposals or offers (including any amendments thereto) and the status of any such discussions or negotiations.

59. Moreover, the Merger Agreement contains a highly restrictive "fiduciary out" provision permitting the Board to change its recommendation of the Proposed Transaction under extremely limited circumstances, and grants Jefferies a "matching right" with respect to any "Superior Proposal" made to the Company. Section 5.02(f) of the Merger Agreement provides:

> Notwithstanding anything to the contrary set forth in this Agreement, following receipt of a written Acquisition Proposal by the Company after the date of this Agreement that did not result from a material breach of this Section 5.02 and the Special Committee determines in good faith after consultation with outside counsel and an independent financial advisor of nationally recognized reputation, constitutes a Superior Proposal, the Special Committee or the Company Board (upon recommendation of the Special Committee) may, at any time prior to the time the Company Requisite Stockholder Approvals are obtained, make a Change

in Recommendation, if all of the following conditions are met:

(i) the Company shall have (A) provided to Parent three (3) Business Days' prior written notice, which shall state expressly (1) that it has received a written Acquisition Proposal that constitutes a Superior Proposal and (2) the material terms and conditions of the Acquisition Proposal (including the consideration offered therein and the identity of the Person or group making the Acquisition Proposal), and shall have contemporaneously provided an unredacted copy of the Alternative Acquisition Agreement and all other documents (other than immaterial documents) related to the Superior Proposal (it being understood and agreed that any amendment to the financial terms or any other material term or condition of such Superior Proposal shall require a new notice and an additional two (2) Business Day period), and (B) prior to making such a Change in Recommendation, (x) used commercially reasonable efforts to engage in good faith with Parent (to the extent Parent wishes to engage) during such notice period, which may be on a non-exclusive basis, to consider adjustments to the terms and conditions of this Agreement such that the Alternative Acquisition Agreement ceases to constitute a Superior Proposal, or (y) in determining whether to make a Change in Recommendation, the Company Board and the Special Committee shall take into account any changes to the terms of this Agreement proposed by Parent and any other information provided by Parent in response to such notice; and

(ii) the Special Committee determines in good faith after consultation with outside counsel and an independent financial advisor of nationally recognized reputation that, in light of such Superior Proposal and taking into account any revised terms proposed by Parent, such Superior Proposal continues to constitute a Superior Proposal and that the failure to make such Change in Recommendation would reasonably be expected to be inconsistent with the directors' fiduciary duties to the Public Stockholders under applicable Law.

60. Additionally, Jefferies entered into a voting agreement with HomeFed, pursuant to which Jefferies has agreed to vote all of its HomeFed shares in favor of the Proposed Transaction. Jefferies is the beneficial owner of 10,852,123 shares of HomeFed common stock, which represents approximately 70% of the outstanding shares of HomeFed common stock.

***The Registration Statement Omits Material Information, Rendering It False and Misleading***

61. Defendants filed the Registration Statement with the SEC in connection with the Proposed Transaction, which recommends that the Company's stockholders vote to approve the Proposed Transaction and scheduled a stockholder vote for June 28, 2019.

62. As set forth below, the Registration Statement omits material information with respect to the Proposed Transaction, which renders the Registration Statement false and misleading.

63. First, the Registration Statement omits material information regarding the Company's financial projections and the analyses performed by the Company's financial advisor in connection with the Proposed Transaction, Houlihan.

64. The Registration Statement fails to disclose the Company's financial projections that were reviewed and discussed at the March 22 and March 25, 2019 Special Committee meetings.

65. With respect to Houlihan's Sum of the Parts Build Up Analysis, the Registration Statement fails to disclose: (i) the information provided by HomeFed management on HomeFed's existing investments; (ii) the information regarding the financial terms of the real estate transactions that were deemed to be relevant; (iii) the individual inputs and assumptions underlying the discount rate range of 9.50% to 13.50%; and (iv) the adjustments made by Houlihan in the analysis.

66. With respect to Houlihan's Consolidated Levered Discounted Cash Flow Analysis, the Registration Statement fails to disclose: (i) the individual inputs and assumptions underlying the discount rates ranging from 10% to 14%; and (ii) the adjustments made by Houlihan in the analysis.

67. The Registration Statement fails to disclose a fair summary of Houlihan's April 12, 2019 fairness opinion.

68. The disclosure of projected financial information is material because it provides stockholders with a basis to project the future financial performance of a company, and allows

stockholders to better understand the financial analyses performed by the company's financial advisor in support of its fairness opinion. Moreover, when a banker's endorsement of the fairness of a transaction is touted to shareholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed.

69. Second, the Registration Statement omits material information regarding potential conflicts of interest of Houlihan.

70. The Registration Statement fails to disclose the timing and nature of the services Houlihan has in the past provided, and is currently providing, to Jefferies and its affiliates.

71. Full disclosure of investment banker compensation and all potential conflicts is required due to the central role played by investment banks in the evaluation, exploration, selection, and implementation of strategic alternatives.

72. Third, the Registration Statement omits material information regarding the background of the Proposed Transaction.

73. The Registration Statement fails to disclose from which HomeFed director Jefferies proposed to purchase shares of HomeFed common stock in March 2017.

74. The Registration Statement fails to disclose what prompted Special Committee member Considine to send the September 2017 Letter to Individual Defendant Steinberg, including whether Jefferies previously approached Considine or any other Company representative regarding a potential merger.

75. The Registration Statement fails to disclose Considine's basis for suggesting an exchange ratio of approximately two shares of Jefferies common stock for each share of HomeFed common stock in the September 2017 Letter.

76. The Registration Statement fails to disclose which member of the Special Committee gave Jefferies permission to contact BMO in March 2019 and his reasons for doing so.

77. The Registration Statement fails to disclose Jefferies' basis for refusing to provide its financial projections as discussed at the March 15, 2019 Special Committee meeting, as well as the nature of the Special Committee's discussions on Jefferies' refusal and whether the Special Committee ultimately received the financial projections.

78. The Registration Statement fails to disclose the reasons Individual Defendants Bienvenue and Borden did not abstain from voting on the Proposed Transaction due to their affiliations with Jefferies.

79. The Company's stockholders are entitled to an accurate description of the "process" the Individual Defendants used in coming to their decision to support the Proposed Transaction.

80. The omission of the above-referenced material information renders the Registration Statement false and misleading, including, *inter alia*, the following sections of the Registration Statement: (i) Background of the Merger; (ii) Recommendation of the Special Committee; HomeFed's Reasons for the Merger; (iii) Opinion of the Special Committee's Financial Advisor; and (iv) Certain Financial Projections of HomeFed.

81. The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to the Company's stockholders.

## COUNT I

**Claim for Violation of Section 14(a) of the 1934 Act and Rule 14a-9 Promulgated Thereunder Against the Individual Defendants and HomeFed**

82. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

83. The Individual Defendants disseminated the false and misleading Registration Statement, which contained statements that, in violation of Section 14(a) of the 1934 Act and Rule

14a-9, in light of the circumstances under which they were made, omitted to state material facts necessary to make the statements therein not materially false or misleading. HomeFed is liable as the issuer of these statements.

84. The Registration Statement was prepared, reviewed, and/or disseminated by the Individual Defendants. By virtue of their positions within the Company, the Individual Defendants were aware of this information and their duty to disclose this information in the Registration Statement.

85. The Individual Defendants were at least negligent in filing the Registration Statement with these materially false and misleading statements.

86. The omissions and false and misleading statements in the Registration Statement are material in that a reasonable stockholder will consider them important in deciding how to vote on the Proposed Transaction. In addition, a reasonable investor will view a full and accurate disclosure as significantly altering the total mix of information made available in the Registration Statement and in other information reasonably available to stockholders.

87. The Registration Statement is an essential link in causing plaintiff and the Company's stockholders to approve the Proposed Transaction.

88. By reason of the foregoing, defendants violated Section 14(a) of the 1934 Act and Rule 14a-9 promulgated thereunder.

89. Because of the false and misleading statements in the Registration Statement, plaintiff and the Class are threatened with irreparable harm.

## COUNT II

**Claim for Violation of Section 20(a) of the 1934 Act
Against the Individual Defendants and Jefferies**

90. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

91. The Individual Defendants and Jefferies acted as controlling persons of HomeFed within the meaning of Section 20(a) of the 1934 Act as alleged herein.  By virtue of their positions as officers and/or directors of HomeFed and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Registration Statement, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that plaintiff contends are false and misleading.

92. Each of the Individual Defendants and Jefferies was provided with or had unlimited access to copies of the Registration Statement alleged by plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

93. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged herein, and exercised the same.  The Registration Statement contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction.  They were thus directly involved in the making of the Registration Statement.

94. Jefferies also had direct supervisory control over the composition of the Registration Statement and the information disclosed therein, as well as the information that was omitted and/or misrepresented in the Registration Statement.

95. By virtue of the foregoing, the Individual Defendants and Jefferies violated Section 20(a) of the 1934 Act.

96. As set forth above, the Individual Defendants and Jefferies had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) of the 1934 Act and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the 1934 Act. As a direct and proximate result of defendants' conduct, plaintiff and the Class are threatened with irreparable harm.

## PRAYER FOR RELIEF

**WHEREFORE**, plaintiff prays for judgment and relief as follows:

A. Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B. In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

C. Directing the Individual Defendants to disseminate a Registration Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D. Declaring that defendants violated Sections 14(a) and/or 20(a) of the 1934 Act, as well as Rule 14a-9 promulgated thereunder;

E. Awarding plaintiff the costs of this action, including reasonable allowance for plaintiff's attorneys' and experts' fees; and

F. Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff hereby requests a trial by jury on all issues so triable.

Dated: June 4, 2019

**OF COUNSEL:**

**RM LAW, P.C.**
Richard A. Maniskas
1055 Westlakes Drive, Suite 300
Berwyn, PA 19312
Telephone: (484) 324-6800
Facsimile: (484) 631-1305
Email: rm@maniskas.com

**RIGRODSKY & LONG, P.A.**

By: */s/ Gina M. Serra*
Brian D. Long (#4347)
Gina M. Serra (#5387)
300 Delaware Avenue, Suite 1220
Wilmington, DE 19801
Telephone: (302) 295-5310
Facsimile: (302) 654-7530
Email: bdl@rl-legal.com
Email: gms@rl-legal.com

*Attorneys for Plaintiff*